In re Leonard W. HOUSTON, Debtor.

**RIDGEWOOD SAVINGS BANK,**
**Plaintiff,**

v.

**Leonard W. HOUSTON, and Bertram J.**
**Berger, as Trustee in Bankruptcy,**
**Defendants.**

**Bankruptcy No. 79–B–10229 (HCB).**

United States Bankruptcy Court,
S.D. New York.

Aug. 24, 1983.
As Amended Sept. 28, 1983.

Dollinger, Gonski & Grossman, Carle Place, N.Y., for plaintiff by Mindy A. Leslie, Carle Place, N.Y., of counsel.

Leonard W. Houston, Brooklyn, N.Y., debtor, pro se.

Cornelius Blackshear, Acting U.S. Trustee, S.D.N.Y., New York City, for defendants.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

After an evidentiary hearing, and in consideration of the evidence and testimony presented, this Court makes the following findings of fact and conclusions of law, pursuant to Rule 7052 of the Rules of Bankruptcy Procedure, concerning the debtor's application to set aside a default judgment terminating the automatic stay provided by § 362(a) of the Bankruptcy Code and permitting plaintiff to commence an action to foreclose on its mortgage lien.

## PRIOR PROCEEDINGS AND FINDINGS OF FACT

1. Plaintiff, Ridgewood Savings Bank ("Plaintiff" or "Bank") is a domestic banking corporation organized and existing under the laws of the State of New York. The Bank, as assignee from Marschall Associates, Inc., holds a mortgage bond in the face amount of $26,000 that is secured by a first mortgage on real property known as 99–10 215th Street, Queens Village, New York, the home of the debtor, Leonard W. Houston. Debtor asserts that the property has an appraised value of $37,000.

2. The debtor filed his Chapter 13 petition and Wage Earner Plan on November 29, 1979, in United States Bankruptcy Court for the Southern District of New York. The plan was modified on December 28, 1979, and April 17, 1980. On May 13, 1980, by order of this Court, the plan was further modified to provide for payment of $220 per month to the Trustee and the debtor ordered to make his regular monthly mortgage payments *outside* the Chapter 13 plan directly to the Bank. The plan was confirmed on June 15, 1980. The debtor has not made any payments directly to the Bank outside the Chapter 13 plan.

3. On December 15, 1981, the Plaintiff commenced this adversary proceeding seeking judgment vacating the automatic stay provided in § 362 of the Bankruptcy Code in order to permit foreclosure. By Order dated February 16, 1983, this Court granted judgment to the Plaintiff by virtue of the debtor's default in appearing at the adversary proceeding. By Order to Show Cause dated February 17, 1983, the debtor moved the court for an order vacating the default judgment and dismissing the complaint. On March 22, 1983, this Court denied the motion to vacate the default judgment and the debtor's subsequent motion for a stay pending appeal. But this Court ordered, however, that the Plaintiff not proceed past a judgment of foreclosure and sale until debtor's appeal is perfected and heard. Appeals were taken.

4. On the appeal, District Judge Robert J. Ward ruled that the record before him was insufficient and that he could not decide the question as to whether or not the debtor's motion to vacate the default judgment entered against him was properly denied. He, therefore, remanded the case so that the Bankruptcy Judge could enter into the record his reasons for denying debtor's motion to vacate and placed the case on the District Court's suspense docket pending further proceedings by the Bankruptcy Judge.

5. Since the Bankruptcy Judge who heard the motion had resigned in the interim, this case was reassigned to the undersigned. Because of the reassignment, the debtor's motion was heard anew and an evidentiary hearing was held.

6. At the hearing, it was established that the debtor's last payment directly to the Bank was made in November of 1979. *Record at 20.* From December, 1979, to April, 1983, debtor's total mortgage arrears were $10,377.12. *Record at 34.* Payment of approximately $35,000 is required to satisfy the mortgage and bond. *Record at 35.* The Bank has also paid all the taxes on the subject property until at least April, 1982. *Record at 29, 38.* The Veterans Administration which had guaranteed the mortgage fixed the termination date of its

liability under a mortgage guarantee at July 1, 1983. *Record at 33–34.*

7. The property is encumbered by not only the mortgage but by judgment liens in favor of National Bank of North America and Paragon Progressive Federal Credit Union in the amount of $6,549. The property is further encumbered by subordinate mortgage liens in favor of Chemical Bank in the amount of $3,337.57 and Gramatan Home Investors Corp. in the amount of $8,337.84. The secured debt owed Chemical Bank has been paid. *Record at 11.*

8. The debtor's uncontradicted testimony is that a severe ankle injury while in the City of Middletown, New York, prevented him from attending the hearing at which the default was ordered. In any event, he moved promptly to vacate the judgment.

## CONCLUSIONS OF LAW

■ 1. An application to grant or set aside a default judgment is addressed to the sound discretion of the court. *American Metals Service Export Co. v. Ahrens Aircraft, Inc.,* 666 F.2d 718, 720 (1st Cir.1981); *Central Operating Co. v. Utility Workers of America, AFL–CIO,* 491 F.2d 245, 252 (4th Cir.1974); *United States v. Erdoss,* 440 F.2d 1221, 1223 (2d Cir.1971), *cert. denied* 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971); *Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir.1970); *New York State Health Facilities Association, Inc. v. Carey,* 76 F.R.D. 128, 132 (S.D.N.Y.1977).

2. A default judgment in bankruptcy proceedings may be set aside pursuant to Fed.R.Civ.P. 55 and Fed.R.Civ.P. 60, made applicable to bankruptcy through Rules 7055 and 9024 of the Rules of Bankruptcy Procedure. A default judgment in bankruptcy proceedings thus may be set aside pursuant to Federal Rule 60. *In re Arctic*

*Enterprises,* 16 B.R. 153, 154 (Bkrtcy.D. Minn.1981); *In re McNeil,* 13 B.R. 743, 744, 8 Bankr.Ct.D. 114 (Bkrtcy.S.D.N.Y.1981); *In re Levensaler,* 13 Bankr. 140, 141 (Bkrtcy.D.Conn.1981).

■ 3. The debtor claims that his failure to appear was the result of mistake, inadvertence or excusable neglect as provided in Rule 60(b)(1). His unrebutted assertion that a badly sprained ankle suffered in Middletown, New York, prevented him from attending the hearing constitutes excusable neglect in these circumstances since he was out of this district and promptly moved to vacate the default. Default judgments have been set aside when an illness or injury of the defaulting party appears to have been a primary reason for the party's absence or lack of response at trial, *Rooks v. American Brass Co.,* 263 F.2d 166 (6th Cir.1959); *Gill v. Stolow,* 240 F.2d 669 (2d Cir.1957); *Ken-Mar Airpark Inc. v. Toth Aircraft & Accessories Co.,* 12 F.R.D. 399 (W.D.Missouri, 1952). The injury, combined with the fact that the debtor filed for relief just one day after the judgment was entered, *Bridoux v. Eastern Airlines, Inc.,* 214 F.2d 207 (D.C.Cir.), *cert. denied* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647 (1954), are strong reasons for granting a motion to set aside a default judgment.[1]

■ 4. Such relief should only be awarded, however, where the defaulting party also demonstrates facts sufficient to indicate the presence of a meritorious defense. *American Metals Service Export Co. v. Ahrens Aircraft Inc.,* 666 F.2d 718, 720 (1st Cir.1981); *Square Constr. Co. v. Washington Metropolitan Area Transit Authority,* 657 F.2d 68, 71 (4th Cir.1981); *In re Stone,* 588 F.2d 1316, 1319 (10th Cir.1978); *Gomes v. Williams,* 420 F.2d 1364, 1366 (10th Cir.1970); *Consolidated Masonry and*

---

1. The debtor has also contended that he did not receive service of process although it was mailed to his home which is the subject of this proceeding. He claims that service should have been directed to designated address. We do not find his testimony credible in this regard. We note that he received other mail addressed to his home. *Record at 18.* Service by mail addressed to the debtor's home rather than to some post office box designated after the petition was filed complies with Rule 704(c) of the Rules of Bankruptcy Procedure. Service by mail addressed to an individual at his home is provided for in Rule 704(c)(1). Service by mail addressed to a debtor at a designated address complies with Rule 704(c)(9). These are not exclusive, but alternative methods of service.

*Fireproofing, Inc. v. Wagman Constr. Corp.,* 383 F.2d 249, 251 (4th Cir.1967); *Horn v. Intelectron Corp.,* 294 F.Supp. 1153, 1155–56 (S.D.N.Y.1968); *Aberson v. Glassman,* 70 F.R.D. 683, 684 (S.D.N.Y.1976); *Edenburn v. Pacific Finance Loans,* 9 B.R. 457, 459 (Bkrtcy.E.D.Mich.1981). The debtor has not met this burden. Since he opposed relief from the automatic stay pursuant to Bankruptcy Code § 362(d) [2], the debtor had to show, pursuant to § 362(g)(2) that the Plaintiff was adequately protected.

5. The concept of adequate protection, although not defined in § 362(d)(1), *In re Monroe Park,* 17 B.R. 934, 937; 6 Collier Bankr.Cas.2d 139, 142 (D.C.D.Del.1982); 2 Collier on Bankruptcy ¶ 361.01 at 361–3 (15th Ed.1983), is delineated by concern for protection of the secured creditor from decrease in the value of the collateral securing its claim. *In re Saypol,* 31 B.R. 796, slip op. (Bkrtcy.S.D.N.Y. July 5, 1983); *In re Pine Lake Village Apartment Co.,* 19 B.R. 819, 825, 8 Bankr.Ct.D. 1402, 1405, 6 Collier Bankr.Cas.2d 713, 718–19 (Bkrtcy.S.D.N.Y. 1983).

6. In the case at bar, the Bank has not received any payments directly from the debtor since November 1979, and has had to pay the taxes on the property until at least the Spring of 1983. *Record at 28 and 38.* A mortgagee's payment of taxes owed by the mortgagor is such a decline. Had the Bank merely permitted property taxes to accrue, the resulting first priority lien would have eroded the Bank's interest. Such erosion is a lack of adequate protection and requires vacature of the automatic stay. *In re El Patio, Ltd.,* 6 B.R. 518, 522, 6 Bankr.Ct.D. 1098, 1100 (Bkrtcy.C.D.Cal. 1980). A mortgagee who avoids the imposition of a superior tax lien by paying the taxes should not, solely for that reason, be deemed to have been afforded adequate protection. Instead the reverse is true: a mortgagee who pays the taxes owed by the mortgagor and is not reimbursed therefor is not adequately protected. The Code does not require a mortgagee to pay such taxes; nor does it penalize him for doing so. *See, In re Kingman Warehouse Co.,* 17 B.R. 377, 381 (Bkrtcy.N.D.Iowa, 1983).

7. In addition, Plaintiff has shown that the debtor has no equity in the subject property. In order for there to be an "equity cushion" there must be a surplus of value remaining after the amount of the encumbrances against the property is subtracted from the fair market value of the collateral. *In re Mikole Developers,* 14 B.R. 524, 525 (Bkrtcy.E.D.Pa.1981); *Accord, Commonwealth of Pennsylvania State Employee's Retirement Fund v. Roane,* 14 B.R. 542, 545 (D.C.E.D.Pa.1981); *La Jolla Mortgage Fund v. Rancho El Cajon Assoc.,* 18 B.R. 283, 287 (Bkrtcy.S.D.Cal.1982). Here, it is evident that the debtor has no equity in the subject property. Debtor's own appraisal values the property at $37,000; the encumbrances total approximately $50,000.

8. Debtor's claim that the second mortgage should be considered as his equity, *Debtor's Proposed Findings of Fact and Conclusions of Law at 14,* pursuant to *In re Pizzolato,* 281 F.Supp. 109 (W.D.Ark.1967) is without merit. The debtor in *Pizzolato* showed that the second mortgagee opposed foreclosure and that its interests were the same as the debtor's. No such showing was made here. Moreover, the Bank's claims here, unlike those in *Pizzolato,* by themselves, nearly exceed the appraised value of the property. The *Pizzolato* court did not count the amount of the second mortgagee to the equity of the debtor as is claimed here. Rather, it apparently did not include

---

**2.** Section 362(d) provides relief from the stay: Upon request of a party in interest and after notice and a hearing, the courts shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property; if
(A) the debtor does not have an equity in such property, and
(B) such property is not necessary to an effective reorganization. 11 U.S.C. § 362(d).

the second mortgage in determining the debtor's equity in the property.

9. The Bank not being furnished with adequate protection and the debtor having no equity in the property, the debtor has no meritorious defense under § 362(d) of the Code.

10. This brings us to the third element to be considered on a default judgment, as recently set forth in *Davis v. Musler,* 713 F.2d 907 at 915 No. 442-August Term 1982, slip op. at 5250 (2d Cir. July 18, 1983): the level of prejudice that may occur to the non-defaulting party if relief is granted.

> "[R]elief from a default entry or judgment essentially is a matter of fairness and judicial discretion, and the single most persuasive reason for denying a . . . motion is prejudice to the non-defaulting party caused by reopening the action."

10 Wright and Miller, Federal Practice and Procedure ¶ 2699 (2d Ed.1983). "[D]elay alone is not a sufficient basis for establishing prejudice" *Davis v. Musler, supra,* at 916. The prejudice to the Bank, however, amounts to far more than delay. Here, the Bank has waited nearly four years without receiving a single mortgage payment, has had to dig into its own pocket to pay at least some of the taxes, has seen the Veterans Administration guarantee terminated because of the delay, and, most importantly, has seen the mortgage debt grow to the point where it will shortly exceed the debtor's appraisal of the value of the property. Any further delay would only increase the Bank's unsecured exposure without any prospect of recovery from a debtor who has refused to pay a single mortgage payment since November 1979. The absence of a meritorious defense, together with the prejudice which will accrue to the Bank were the default judgment vacated, show that to reopen the default would be frivolous and inequitable.

It is So Ordered.