**AMERICAN & FOREIGN INSURANCE ASSOCIATION et al., Defendants, Appellants,**

v.

**COMMERCIAL INSURANCE CO., Plaintiff, Appellee.**

**No. 77–1292.**

United States Court of Appeals, First Circuit.

Submitted Feb. 13, 1978.

Decided May 12, 1978.

Antonio Cordova Gonzalez and Cordova Gonzalez, Law Offices, San Juan, P. R., on brief for defendants, appellants.

Charles A. Cordero, San Juan, P. R., on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, MOORE *, Senior Circuit Judge, CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

This is an appeal from the district court's refusal to set aside judgment pursuant to F.R.Civ.P. Rules 55(c) and 60(b). The judgment was entered against appellants, two insurance companies and their insured, in default when their attorney failed to appear on the scheduled trial date. Appel-lants argue that the court lacked *in personam* jurisdiction over them and that the court abused its discretion in failing to set aside the default judgment.

The insurance companies operate out of Colombia. The policy was sold in Colombia to the insured, a Colombian corporation that manufactures glass bottles. The insured shipped a large volume of these bottles to Puerto Rico. One bottle exploded, giving rise to the instant action. The district court, ruling that the insurance policy covered the bottles, concluded that the insurance companies were providing coverage on a subject of insurance located in Puerto Rico and, pursuant to the laws of Puerto Rico, were subject to service of process in Puerto Rico as unauthorized insurers. 26 L.P.R.A. §§ 105, 106, 303(1), 329(1), and 1005(1).[1] *See Commercial Ins. Co. v. American & Foreign Ins. Ass'n,* 370 F.Supp. 345, 350–51 (D.P.R.1974).

We read appellants' brief as challenging the constitutionality of holding them amenable to suit in Puerto Rico, not the district court's interpretation of Puerto Rican law.[2] Appellants argue that "none of [the companies] had ever engaged or done any business in Puerto Rico as to constitute the minimal contacts required to serve process pursuant to Rule 4(e) of the Federal Rules of Civil Procedure." They cite *Inter-*

---

* Of the Second Circuit, sitting by designation.

1. Section 105 states: " 'Contracting or transacting' with respect to insurance includes any of the following: . . . (4) Insuring or reinsuring [;] (5) [The] transaction of matters subsequent to execution of the contract and arising out of it."

Section 106 states: "No person shall engage in the business of insurance in Puerto Rico, or relative to a subject of insurance resident, located or to be performed in Puerto Rico, without complying with the applicable provisions of this title."

Section 303(1) states: "No person shall act as an insurer and no insurer shall transact insurance in Puerto Rico except as authorized by a subsisting authority granted to it by the Commissioner, except as to such transactions as are expressly otherwise provided for in this title."

Section 329(1) states: "No insurer shall effectuate any direct insurance upon or relative to any person, property, or other subject of insurance resident, located, or to be performed in Puerto Rico, except through a licensed agent of such insurer residing in Puerto Rico."

Section 1005(1) states: "Delivery, effectuation, or solicitation of any insurance contract, by mail or otherwise, within Puerto Rico by an unauthorized insurer, or the performance within Puerto Rico of any other service or transaction connected with such insurance by or on behalf of such insurer, shall be deemed to constitute an appointment by such insurer of the Commissioner as its attorney-in-fact upon whom may be served all lawful process issued within Puerto Rico in any action against such insurer arising out of any such contract or transaction, or in any action or proceeding instituted to obtain the annulment of said contract."

2. In any event, we have reviewed the district court's reasoning, and we agree with it.

national *Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.

The argument is without merit. The district court found that a large volume of bottles covered by the policy had been sent to Puerto Rico, "constitut[ing] a substantial subject of insurance located in Puerto Rico." *Commercial Insurance Co. v. American & Foreign Insurance Ass'n,* 370 F.Supp. 345, 350 (D.P.R.1974). The insurance companies knew that they were covering the product liability risk arising from these bottles "since the terms of the policy assured full knowledge of both the volume of export sales as well as the actual location of the customers." *Id.* The companies' undertaking to insure a substantial subject of insurance in Puerto Rico was "voluntary in [a] meaningful sense", *Vencedor Mfg. Co., Inc. v. Gougler Industries, Inc.,* 557 F.2d 886, 891 (1st Cir. 1977), and this cause of action arises directly from that subject of insurance. Thus we conclude that the insurance companies "purposely availed" themselves " 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws.' " *Id.* at 890, quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See also Whittaker Corp. v. United Aircraft Corp.,* 482 F.2d 1079, 1083 (1st Cir. 1973).

The companies' contacts with Puerto Rico in this case are no more attenuated than those between the defendant and the forum state in *Coulter v. Sears, Roebuck and Co.,* 426 F.2d 1315 (5th Cir. 1970). There the third-party defendant manufacturer sold television sets to Sears with the knowledge that Sears would ship a substantial number to Texas. One of these sets malfunctioned causing a fire. Though the manufacturer had no contacts with Texas other than through its sales to Sears, the Fifth Circuit ruled that Texas courts could constitutionally assert *in personam* jurisdiction over the manufacturer. Moreover, Puerto Rico has a very important interest in protecting the rights of its citizens who are injured by bottles manufactured and insured by appellants, and Puerto Rico is the most convenient forum for trying cases such as this. *See Watson v. Employers Liability Assurance Corp., Ltd.,* 348 U.S. 66, 72–73, 75 S.Ct. 166, 99 L.Ed. 74 (1954) (upholding the application of Louisiana's direct action statute against an insurance company sued in Louisiana, although the contract was negotiated and delivered in Massachusetts and Illinois and contained a clause, recognized as enforceable by both those states, prohibiting direct actions). The insurance industry is "an activity that [Puerto Rico] treats as exceptional and subjects to special regulation" in order to protect "its 'manifest interest' in providing effective redress for citizens who had been injured by nonresidents." *Hanson v. Denckla,* 357 U.S. at 252, 78 S.Ct. at 1239 (suggesting that the special nature of the insurance industry contributed to the finding of sufficient contacts in *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). For these reasons we conclude that due process is not offended by forcing appellants to appear before the courts of Puerto Rico.

■ The law is settled that motions to set aside default judgments are addressed to the discretion of the trial court.[3] We will not disturb the district court's decision unless it is clearly wrong. *Gomes v. Williams,* 420 F.2d 1364, 1367 (10th Cir. 1970). Although normally there is a preference for allowing cases to be resolved on the merits,

3. Each of the other circuits has adopted this rule. *Hughes v. Holland,* 116 U.S.App.D.C. 59, 320 F.2d 781 (1963); *United States v. Erdoss,* 440 F.2d 1221 (2d Cir. 1971); *Wokan v. Alladin Int'l Inc.,* 485 F.2d 1232 (3d Cir. 1973); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Co.,* 383 F.2d 249 (4th Cir. 1967); *Baez v. S. S. Kresge Co.,* 518 F.2d 349 (5th Cir. 1975); *Smith v. Kincaid,* 249 F.2d 243 (6th Cir. 1957); *Duling v. Markun,* 231 F.2d 833 (7th Cir. 1956); *Missouri v. Fidelity & Casualty Co. of New York,* 107 F.2d 343 (8th Cir. 1939); *Savarese v. Edrick Transfer & Storage,* 513 F.2d 140 (9th Cir. 1975); *Gomes v. Williams,* 420 F.2d 1364 (10th Cir. 1970). *Cf. Zavala Santiago v. Gonzalez Rivera,* 553 F.2d 710 (1st Cir. 1977) (dismissal for want of prosecution). *See also* 10 Wright & Miller, *Federal Practice and Procedure* § 2693 (1973); 6 Moore, *Federal Practice* ¶ 55.10[4].

it is the district court's duty to weigh the reasons for and against setting aside a default judgment. *Id.* at 1366. It is also settled that a party seeking to have a default judgment set aside bears the burden of showing good reason for the default and the existence of a meritorious defense. *See id.*

Appellants herein satisfied neither requirement. First, the motions addressed to setting aside the judgment were based entirely on excusable neglect in failing to show up for the trial. They did not even allege a meritorious defense, let alone set it out with the required specificity. *See id.* Moreover, the district court ruled that "the evidence was overwhelming as to the [appellants'] liability." Second, the court was justified in finding that the default was not excusable. The trial date was known to the parties well in advance. Appellants' attorney had no cause to take for granted that his request for reconsideration of the court's denial of an earlier request for a continuance would be granted. If he could not be present on the trial date, it was his responsibility to arrange for someone else to be. The court was well within its discretion in refusing to set aside the judgment.

*Affirmed.*